Good morning, your honors. I'm Cassie Springer-Aiene, not to be confused with Cassie, the plan administrator here, appearing on behalf of David Barboza. With the court's permission, I'd like to reserve five minutes of my time for rebuttal. A typical arrest of disability case involves a question as to whether somebody's disabled, but that's not this case. Everybody here agrees that Mr. Barboza is a disabled firefighter. This is a disability offset case. A typical one of those involves when the claimant gets sources of income that are offset for his plan, but he actually receives those sources of income. This also isn't that case. Mr. Barboza never received the Section 4850 pay that defendants are claiming as an offset to a year of his benefits. He got two months, though, which he conceded in the administrative hearing was a negotiated substitute, which is allowed. So the two months, at least, were offsettable, weren't they? Yes, he did receive those. They were administrative leave while he was awaiting a determination on his disability retirement application. And he, because he's an honest man, he didn't want to double dip. He said you can offset that as though it's 4850. It's not actually 4850, but he allowed it as an offset. So I found this 4850 argument the most troubling to me, and I guess maybe you can walk me through it, because he, and the plan suggests, he negotiated some way to retire that would be beneficial to him. He said, you know, demote me to fire captain, and I'm not physically capable of doing that job, so then I will retire. Isn't that what happened? No, not exactly, Your Honor. What happened is that there was a layoff of the battalion commander position. The only position available to him that he was qualified for was the fire captain. But he wasn't qualified for it, right, because of his disability? No. He was asked by the fire chief, are you able to do this job physically, and he said, I don't know. The fire chief said, well, go ahead and get an evaluation, a medical evaluation. So the timing was that on March 21st of 2006, he started in the fire captain position. On March 27th, he got the medical evaluation with Dr. Patel. Dr. Patel at that time said, you can't do the job. The next day, he didn't. He stopped working after that. So he wasn't sure until he got the medical evaluation. Well, so the plan says, I mean, the sequence of events supports what the plan is arguing. And the plan says, well, even under those facts, he could have resisted the retirement and gotten vocational rehabilitation for a year and then be eligible for the 4850 payments. And under Martinez, he couldn't be fired as long as he was resisting. And they say he should have done that because the plan requires you to get whatever you can. That's what defendants say, but it's actually not an accurate characterization of City v. Martinez. In that case, what happened is that the eligible employee was deemed not permanent and stationary because she was undergoing vocational rehabilitation. Mr. Barbosa was not eligible for voc rehab because that was eliminated in 2003. This is a 2006 claim. But he could not have received vocational rehabilitation. There was no other position that was available to him, so the city was forced under the government code to place him on an employer-initiated disability retirement. That's exactly what they did. So you're saying that the specific facts of Martinez are not applicable here because the vocational rehab eligibility was not there anymore. And so that there was no way, because the plan said to Mr. Barbosa, you know, look at 4850 and see what you can do to maximize getting those payments, and you're saying there was nothing he could do. He did, yeah, there was nothing else he could do. He did everything he could. He applied for a worker's compensation benefit to include a temporary disability benefit. He submitted that in 2006. A worker's compensation application is one in the same as a 4850 application. The HR director, Olvera, said in her deposition, which we quoted, that there is nothing else, that you apply for worker's compensation and then you're deemed are you eligible for 4850. So in Maria Olvera's deposition, that appears at 2 ER 180 through 181, about the question of what is 4850 pay. So he applied for 4850 pay. That was an error by the district court to say that he did not apply for 4850 pay. Merely by submitting his worker's comp application, he applied. He did everything he could. He was denied. But there was nothing else he could do about that. The problem was that the decision was out of his hands. Also, the retirement was out of his hands. The city was required to do that under California Government Code 21156. Defendants also raised the argument that perhaps he should have negotiated for a year-long leave of absence as a reasonable accommodation so that he could collect 4850 pay and then get his retirement thereafter. But as we know, the interactive process requires a good faith interactive process. And he knew that he was permanent and stationary. He was not going to be able to return to work after a year or get medical improvement. Nobody was saying that he could. So it would have been dishonest for him to say, give me a leave of absence so that maybe I can return when he knew that that wouldn't be true. And an employer, of course, is not obligated to hold a job open indefinitely, pending a perhaps medical improvement in the future. I hope that addresses the court's troubles about 4850 pay. There's simply nothing else that he could have done in order to get that. I'd like to talk about the statutory penalties issue for a moment and emphasize that prejudice or reliance on the requested documents is not an element for whether statutory penalties are appropriate under MRSA. But we did say it's a factor that the district court may consider in deciding whether to impose a penalty. It's a factor, but it is not a requirement. It's not a requirement, but the district court considered it and said, here, there wasn't any prejudice. And so our job is to determine whether that was an abuse of discretion. So why was that an abuse of discretion? It's an abuse of discretion because it undercuts the entire purpose of the statutory penalties provision if prejudice is the determinative factor. It wasn't a factor that she just considered. It was the only factor she considered for why penalties should not be imposed. The first document, I guess, the administrative service contract, the court said wasn't relevant. The claims note, he said, wasn't prejudicial because it didn't deny him the ability to meaningfully participate in the appeals process, and he ultimately won. So there was no prejudice. There's no prejudice. Though we have to say that was illogical, implausible, or without support in the record. Well, I think what the court can do is say that the statutory penalties are there in order to support the purpose of ERISA. And the purpose of ERISA is that upon request, plan administrators are required to produce these documents, and that's not what happened here. And they ultimately did produce them, is that right? A year after the initial request, they produced the administrative services agreement and the claims notes, but they never produced the claims guidelines, which are required under ERISA as well. I mean, the regulations have no teeth if there's no penalties imposed where somebody is able to succeed on other grounds. I mean, it's kind of a rare case where there's even a document penalties issue because you have to have somebody who – most people don't bring a document penalties claim on its own. It's usually in conjunction with something else. Mr. Barbosa was denied these documents, and Cassie should be deterred from doing this to future participants. It's got a lot of participants in this fund. When somebody submits a request, they should know, oh, we should provide those documents so that we don't have penalties. They don't have that deterrent effect that a statutory penalty situation. And I'd also like to address the attorney's fees issue. The Supreme Court and this court are very clear that unless there are special circumstances, if a plaintiff achieves some degree of success on the merits, he ordinarily gets a fee award. That was Hart in the Supreme Court and Smith in this court. And in McConnell, this court stated that the only justification for not awarding fees to a plaintiff who achieves some degree of success is if there are special circumstances that make a fee award unjust. Here, the district court did not identify any special circumstances that make the fee award unjust. So in Hummel, we said the court should just – if there was some success on the merits, the court should consider a handful of factors. The court here considered the factors and said not appropriate. So what was wrong with the court's review of the Hummel factors? Yeah, the court actually did consider a couple of the Hummel factors, not all of them. And the court said that – concluded that plaintiff did achieve some degree of success on the merits. However – But then said there wasn't any bad faith and it was if both parties had success on the merits. I guess – I suppose the district court could have awarded both parties attorney's fees and just canceled each other out. But, I mean, I'm hard-pressed to see why what the district court did abused its discretion. Yeah, I'd be happy to talk about that. Because perhaps it would have been a better situation if the court had awarded plaintiff's fees and then separately addressed defendant's fee motion instead of saying, well, since you both applied for fees and you both had some success, nobody gets any. That's not the standard. That's splitting the baby, in a way. And it's not what Hummel requires. And, in fact, there's a special circumstances test for plaintiffs that doesn't apply for defendants. So it was inappropriate to apply the same standard for both plaintiff and defendants. Absent special circumstances, because Mr. Barbosa prevailed on some claims, he was entitled to a fee award. Defendants were not entitled to a fee award absent special circumstances. This case, this Court has said that it fulfills ERISA's remedial purposes to ordinarily award fees to a prevailing plaintiff. We have to bear in mind the protective power of ERISA and give fees liberally to a planned participant. That was in the McElwain case that this Court decided. Excuse me, that this Court decided. So it was inappropriate for the district court to say, because there are competing fee motions, nobody wins. I mean, it really would serve as an incentive. Well, it didn't just say that. It said that either party acted in bad faith, and the plan's attempt to offset benefits was inherently reasonable, and the case presented complex issues. And so it didn't think that the fee shifting was appropriate based on those factors. Yeah. I mean, bad faith is not a determinative factor. Courts interpreting Hummel have said it's a factor, but it's not. You actually don't need bad faith. Yeah, I mean, the Court considered a range of factors and ultimately concluded in the exercise of its discretion not to award fees. Yeah. So it's hard to say why that wasn't used. Because it did not apply this Court's special circumstances test. It is very clear that plaintiffs who prevail on any degree of success on the merits get a fee award absent special circumstances. The Court did not say what special circumstances were in place, and that's the key part of the decision that was erroneous, to not apply the special circumstances test. Are there any further questions on plaintiffs? Okay, then I'll reserve the balance of my time. Thank you. All right. And from the plan. Good morning. Please support Brendan Begley again on behalf of defendants from Weintraub-Tobin. Again, if I may, since I'm a cross-appellant in this case as well, if the Court will indulge me, I'd like to reserve just maybe five minutes of my time for rebuttal. That's fine. Thank you, Your Honor. You know, 4850 pay, I understand the concern about that. Yakuta, did I say that right? Mm-hmm. It's a difficult thing because it's a workers' comp benefit. Well, they say, opposing counsel says, your Martinez argument doesn't work because at the time there was no ability of Mr. Barbosa to obtain vocational rehabilitation, which was the basis of the Martinez ruling. Do you disagree with that? I do disagree with that. The basis of the Martinez ruling is that you can't forcibly disability-retire somebody while they're on that 4850 pay. And so I think her argument really is saying because he wasn't eligible for 4850 pay, it doesn't apply. But was he eligible for vocational rehabilitation because opposing counsel says no? I believe he was because his injury was pre-2004. And that's when they stopped that, was in 2004. But even if he weren't, he's still entitled to 4850. And if you like, I can briefly explain why I think that is. Okay, because he, you know, 4850 says you have to be working, and he retired. So he wasn't working. So he wasn't eligible under the plain language. He disability-retired because his employer applied for that. And under Martinez, he can resist that while he's getting 4850 pay and say, no, not yet. Not until my 4850 is exhausted. Well, in Martinez, he was resisted and said he was on vocational rehab. Yeah, so he was eligible. Yeah, and so that was, as I understood opposing counsel, the argument was, well, Mr. Barbosa was not eligible for that. It doesn't matter whether you're eligible because of both rehab or because of temporary disability or because of permanent disability. The city of Martinez can't be distinguished on facts like that because it doesn't constrain it. It says if you're getting 4850, it doesn't say the reason it has to be you're getting it. It says if you're getting it, the employer can't forcibly retire you. Now, they also cite a statute on that point, 21-156 of the government code, and it says that the employer can move the disability to retire somebody on 4850 pay once they're permanent and stationary. But then there's a process for that, and that can go all the way to administrative law judge. And so they can't really do it under city of Martinez, and even under the statute they said you can't forcibly disability to retire somebody on 4850 pay unless you go that route. The thing is here, though, Mr. Barbosa waived the 4850 pay. That's the thing. You know, he waived it from the outset. He signed this agreement with his employer and said I'm not going to come after you for that. He was eligible for it because he got two months of it. And, you know, it's his waiver of that pay that is the critical thing here. He was eligible because it's a workers' comp benefit, but it's paid by the employer. And so just the fact that he filed this other workers' comp claim, 4850 says you're going to get paid by your employer a full year of salary. But if you're getting temporary disability benefits, those benefits are going to be, they're going to go back to your employer. You can't double that. So the carrier is paying the temporary disability. It's the employer that pays the 4850. It's not enough just to file this workers' comp claim and say I have cumulative trauma. He should have been sending something to his employer and saying, hey, there's no dispute that I had an industrial injury. I'm permanently disabled. 4850 says I'm permanently disabled and I can't work. I get one year of salary from you, not from this carrier over here. There's no dispute. He's industrially injured and permanently disabled and therefore unable to work and gets one year of salary replacement. He waived it, though, because, you know, he wanted to get out of the department. He didn't want to commute five days a week instead of three. He didn't want to be on salary instead of overtime. He and his employer reach an agreement, and if I'm implying that that agreement is unlawful, I regret it because I'm an employment lawyer and I advise and counsel dependents all the time in management. And I would tell them if you've got an employee that's a problem and you want to avoid litigation, this isn't a bad way to go. There's no question he's disabled. He's entitled to the disability pension. It's a nice, easy way to help him go on with his life and help us go on with ours. No problem with that. The problem comes in that he waived the 4850 claim. He made my clients, firefighters up in the city. He didn't waive it. He retired, I mean, basically, right? I mean, did he sign a waiver or did he just retire? He signed an agreement with the employer and said, I will not sue you for anything, any kind of administrative claim, any kind of disability claim. I will not bring any more claims against you if you support my application. The plan says anything you're eligible for you have to get or can be used as an offset. But I don't see the plan saying you have to retire in a specific way. In other words, I want to retire now. Well, if you work for another three years, you would get more income on retirement. I don't see the plan saying, well, you have to work the extra three years or you can take an offset of what the additional amount would have been. So this seems a little bit close to that scenario where the plan wants him to retire in a different way than how he wanted to retire. The plan didn't want him to retire at all. The plan wanted him to get one year of 4850 pay, which is the offset the payer entitled to take and she was entitled to get. I don't see the plan saying that even if you decide to retire, it's your obligation to work for another year. Otherwise, we can offset your salary. That wouldn't actually make sense, but also the plain language of the plan doesn't include that requirement. So why isn't this situation more like my hypothetical? I'm sorry, Your Honor. I'm a little lost in your hypothetical, I guess. So participant says, I'm retiring. Disability retiring or I'm retiring because I'm over 50. Disability retiring would be fine as well, but the plan says, no, you should try and work for another year. That's not what we said here. I see your hypothetical now, I think. I understand. Because you'll get so many more benefits and you have an obligation to maximize your benefits. The plan doesn't actually say that. No. The plan says if you're going to go out on disability retirement, get that 4850 first. It's not only a benefit to us, it's a benefit to you. Because it's 4850, your full salary. You're going to get your full salary. But that requires him to be employed on a regular, full-time basis. So it does require him to defer retirement. That's what 4850 says. It's only applicable to a firefighter who is employed on a regular, full-time basis. Which he was. And suffers an industrial injury that permanently disables him. And so now he wants to retire, and so you want us to read the plan to say, no, you can't retire, you have to continue on a regular, full-time basis. No, you have to take your 4850 pay before you do. Well, 4850 is available only to people employed on a regular, full-time basis, according to the words of the statute. He was. He was. When he applied for our benefit, he was. His employer said, we're going to disability retire you. He could have resisted that. He doesn't have to keep working to get the 4850 pay, and he would be eligible for our benefit. He'd get the benefit, just subject to the offset. It's like Social Security. You can't get Social Security until you're disabled. The working person can't get it. But the plan says you have to take that Social Security as an offset. You can't just say, well, I'm just not going to go apply for Social Security because I just want to stop working right now because I'm disabled. And I'm going to give up that Social Security pay. No, you can't do that because that's an offset. We rely on that offset so that we can keep premiums low for 20,000 firefighters throughout the state. That's a benefit that you can get. There's no question about it. So go get that benefit and take that benefit so we get the benefit of the offset. In fact, it's that 4850 pay that allows our plan to be so much less expensive than other disability plans that were sold by insurance companies. The folks who came up with this plan were firefighters who were also insurance salesmen, and they said, you know, these other insurance companies are selling disability. They're not taking into account that a firefighter who has a dangerous job, if they get injured on the job, they're going to be entitled to one year of 4850 pay before the disability insurance kicks in. And so if we take that as an offset, we don't need to charge these firefighters $100 a month. We can sell them these plans for $20 a month. And that's what they did. But they said this 4850 pay is integrated. So you have to go get that. And it's not just the benefit to us. The point I want to make is it's a benefit to the firefighters, too. Because if they get the 4850 pay, it's one year of full salary. If they just disability retire, HRSA is going to pay them 50%, and we're going to pay them 30%. They're not even going to get that 100% for the whole year. So it's a benefit for everybody. It's not a burden to say you have to keep working, which is not really what we're saying. We're saying you have to take that 4850 offset before your employer disability retires you. You have the right to do that. It's going to benefit you, and it's going to benefit us. You don't have to keep working, of course not. Can you address opposing counsel's argument that the district court abused its discretion in not awarding Mr. Roposa's attorney's fees because it didn't make a special circumstances finding? My understanding of the abuse of discretion standard is that, basically, you have to be able to say that no reasonable, rational judge could have done this. And a common way that a judge abuses his discretion is he or she doesn't apply the right law. It doesn't mean we take notice of it. It doesn't mean we go through the analysis and say here are the factors. Judge Mueller did exactly that. She cited Hart and said you have to have some success. If you do, we go to Hamel, which I think is even questionable. Hart, to me, says the U.S. Supreme Court says Ninth Circuit, you don't have to bother with this Hamel. It expressly says that in Hart. Nonetheless, the Ninth Circuit says we want to be careful. We want to do our due diligence, so we're going to march through these five factors. Judge Mueller cited the case. We both cited it to her, and she looked at it, and she said, here are the five factors, and here's how I analyze them. And so she made a discretionary call and say that, you know, she abused her discretion because she didn't award them fees because it was a special circumstance. Hamel doesn't say a special circumstance. And that's older cases that say that. Hamel and Hart come after that. Hart clearly, I think, says all you have to do is achieve some degree of success, and then we figure out if you're entitled to it. And, you know, to say I'm hearing them say that, you know, a prevailing plaintiff and we're the prevailing defendant, we're not really the prevailing defendant. We're a prevailing cross-plaintiff. We filed a cross-claim for those offsets. And so it's not a regular case where you have a defendant who denies a fee, denies a benefit, says, no, we don't think you're disabled, and he has to come to federal court to say, yes, I am disabled. And then you say, well, the plaintiff prevailed, the defendant didn't. In that kind of case, yeah, maybe you have to have a special circumstance because that would be improper. Insurance companies all over the place are just an eyegrain to make people come to federal court. So in that kind of case, you have to have a special circumstance to deny the plaintiff. This is not a benefits case. This is an offsets case. And I don't see where there's any need for a special circumstance. I want to talk about our offsets just a little bit. Really, I want to talk about the injunction about the quarterly meeting rule. This injunction was totally needless. You know, the idea that I, who clerked for the Ninth Circuit, would let any of my clients go about thinking they don't have to follow a Ninth Circuit ruling in a published decision is crazy, and there's no evidence that I or my clients did that. So there's really no – is there any relief we could grant? I mean, the Ninth Circuit ruled that the plan's quarterly meeting rule violated ERISA, correct? And then so far as we know, based on the briefing, the plan hasn't since used the quarterly meeting rule. Is that correct? I'm sorry. So far as you know, it hasn't. That's correct. And the plan has – and you agree that the plan has not used the quarterly meeting rule since then? I tried to say that in my declaration, but unfortunately I said on information and belief because I'm not out there administering it, but I get information from my clients and I ask them. So I didn't have personal first-hand knowledge, but yes, it's my understanding. It never has since then. And I don't want to reveal any attorney-client privilege communication, but you can rest assured that when the Ninth Circuit says this is what you have to do from now on, I tell my clients, go do it today. Don't wait until tomorrow. So, you know, that issue, though, the injunction is really important in the sense that we're complying with it anyhow, so I'm not that excited about you're making me do something I don't want to do or making my client do something he doesn't want to do. Really that's an issue if, you know, I think if you were to say, well, gee, maybe he wasn't entitled to 4850 pay, you know, we also should win on the injunction. You know, that's why it's really important because it goes to fees. You know, both these cases are really a quest for fees. We're arguing about the merits of the claims, but really what's driving it is fees. And we're the prevailing party, and we deserve to prevail. And if you say we didn't prevail on something, I want to show that we should have prevailed on this other thing, and I want to balance it out. If there's any kind of thought that Judge Mueller abused her discretion in the fees award, which I strongly disagree with, it should be if they get it, we get it, too. You know, we prevailed as a plaintiff on a cross-claim trying to recover fees that were concealed from us, three different kinds. You know, 4850 pay that he waived, he had this agreement with his employer that waived it, and he never gave that to us until we got discovery on it years later after this court ruled in 2011. He withheld self-employment and other employment, signed a statement on the penalty of perjury saying I'm not employed in any other employment. He was. He was a railroad engineer climbing up and down the ladder getting on a train, and he was doing this alpaca ranch, and he was also doing this trust stuff where he was making money from all those things he didn't tell us about it. Then he asked us, and, you know, in fairness, I want to point out I've opposed Mr. White now for four years, and I find Mr. White to be a very ethical and decent and intelligent man, and I think he got caught in the switches here, and I don't think he'd be able to tell us one way or another, but we told him if he goes and settles that workers' comp case without letting us be involved in it and tries to kind of commit a fraud, and you and the carrier say, gee, let's call this medical benefit so you get more money but demand less from us and we'll let the plan pay, we told him if your client does that, we're going to take the whole thing as an offset. Mr. White was not the attorney in that workers' comp settlement. You know, his, Mr. Barbosa's workers' comp attorney was, and I believe Mr. White would have told him, you'd better not take that offset, you'd better not do it, but Mr. Barbosa didn't, and I think to very much Mr. White's chagrin. So, you know, he concealed these offsets in three different ways, and we had to go file a cross-complaint against him and get discovery in order to prevail and assert those offsets, which he would have wound up $19,000 richer if he'd never stepped foot in court. But because we found those offsets and he took them, we were the prevailing party on that. Attorney fees are only worth talking about if you reverse her on theirs, I think you have to reverse her on ours. Because if they get it, we get it. We were prevailing plaintiff in this case. I see I'm a little less than five minutes. It's all right, I'll reserve the rest of my time. All right. Thank you. Your Honors, I'd like to actually read a quote from City of Martinez on the 4850 pay issue. The court said, quote, that the claimant was not vocationally permanent and stationary, hence the city could not invoke government code to retire applicant without her consent while she was undergoing vocational rehabilitation. So it was about whether somebody was receiving vocational rehabilitation, which Mr. Barbosa was not entitled to receive. The opposing counsel says he was because the injury happened before the cutoff date. That's incorrect. His injuries were in 1993. He could have received vocational rehab for that for five years thereafter. His injuries in 2006 are what we're talking about. And there was no vocational rehab available. And, in fact, he was found that there was no cumulative trauma injury from those claims that he filed. So when he settled his workers' compensation case, it was for the ongoing medical treatment that he'd been getting since 1993. He'd been getting two chiropractic treatments a month since 1993. He was done with the city. He was on disability retirement. He decided to be done with that component as well. So he settled it out for exactly what he'd been receiving since 1993, which was for medical treatment. There was nothing subversive happening here. It was just to get rid of an ongoing workers' compensation claim that the city and he wanted to do. I also can direct the Court to the layoff agreement, which defendants were saying showed that he waived his 4850 pay, and that's simply not true. That's at 3ER372. So what Mr. Barbosa and the city agreed to was that the city was prepared to expedite the process to determine if Barbosa is qualified for industrial disability retirement benefits. And then said promptly, after verification that there is credible medical evidence supporting the request as determined by a medical practitioner, the city will certify Barbosa as disabled. So this was all about whether he was able to do the job. That's what he agreed to. If the doctor said he couldn't do the fire chief job, then he'd be entitled to disability retirement. And the city, in this layoff agreement, said that they would speed along that process so that he wouldn't be without pay. Absolutely there was no incentive for him to waive 4850 pay. It did pay 100%. He applied for it through the workers' compensation claim. He wanted to get it, but he didn't get it, and nothing can undo that decision. So opposing counsel says that 4850 payments and workers' comp are distinct, and it's not the same thing applying for workers' comp. It's not the same as applying for 4850 compensation. I see no citation for that in case law or in the record. There's numerous cases saying that 4850 pays in lieu of workers' compensation temporary disability payments, which we have cited, and the Olvera deposition, which I quoted to you, says that that's the same application, 4850, and workers' compensation is one and the same. So I don't know where that position is coming from. And I do want to also look at the language of 4850 while we're on the subject, because the court is correct in that it says it's dependent on retirement for how long that continues. It says it pays for one year or until that earlier date as he or she is retired on permanent disability pension. So he was retired. There was nothing else he could have done. He simply couldn't receive the 4850 pay. So opposing counsel says he didn't have to just accept a retirement. He could have resisted retirement and demanded 4850 pay for a year. That is what they're using when they evaluate the city of Martinez case and saying that that's what city of Martinez implies is that he could resist retirement. But if we look at the facts, it's just not the case. She was not permanent and stationary because she was getting vocational rehabilitation. So the court said she could have declined the retirement because she had a possibility of getting back to work. That was not Mr. Barbosa. He had no possibility of getting back to work. And also I'd like to point out that the plan document does not say that you have to take 4850 pay before you retire. That was a dependence characterization, and that's not what the plan requires. If we look at the hump factors, if we go through all five of them, the court didn't go through all five of them below, but culpability, it doesn't have to be present, but it is present here. I mean, we have a situation where he had to go to the Ninth Circuit in order to get a decision that he had exhausted his administrative remittance. They delayed and delayed. He didn't get paid for six years. Well, the Ninth Circuit said, we think this is really close, and we'll defer to the Department of Labor's interpretation of this regulation. So we thought that it wasn't so clear and that there wasn't anything suspicious about that. Yeah, that is true. The court determined it was a close question, but the fact is he did get relief, and it's relief that extends not just to him but to other participants in the plan. Everybody benefits from the Ninth Circuit's decision, and everybody benefits from getting timely decisions on their claims, which also goes to the deterrence factor, which is Humboldt Factor III. Of course, the ability to pay is ordinarily one of the largest factors that the court applies. These factors are not equally weighted, and nobody is saying that the plan doesn't have an ability to pay his about $53,000 of benefits that he hasn't received. That's not an issue here. It benefits everyone in the claim, and the relative merits are strong. The court said that we achieved some degree of success on the merits. So, again, we looked at that special circumstances factor that the court failed to apply. And for defendants' attorneys' fees claims, we can look to San Francisco Culinary, and a lot of cases cited in our third brief saying that ordinarily, well, that court specifically said, we have cautioned that the Humboldt factors very frequently suggest that attorneys' fees should not be charged against a missing plaintiff. Mr. Barbosa is a disabled firefighter who doesn't have much income at all except for his disability pension. He had to take out home loans that amounted to $65,000 in interest that he's paid because he hasn't gotten this money. He does not have the ability to satisfy a fee award against defendants. And it's a bit shocking that they're pursuing it, to be honest. And then, as for the injunction, there was no other way for the court to know whether defendants were complying with this court's order. That I can't understand at all. The Ninth Circuit ruled and said your quarterly meeting rule doesn't work. There's no evidence that you presented that the plan is disobeying the ruling of the Ninth Circuit. I don't see what the case of controversy is. So I'm just questioning why this issue wasn't moot when it came to the district court. It wasn't moot because the defendants did not produce any evidence that they were complying. Why would they have to produce evidence that they are not or are complying with the Ninth Circuit order? I don't understand that. I don't think it's a given, given the history of how this plan is administrated, that they automatically comply with the rules that are in place. Let's move on. Okay. Are there any further questions that the court has? No. All right. Thank you very much. I want to point out about the vocational rehabilitation. He did have a 1993 injury, that's true. And he had a 2006 for cumulative trauma. But in between there, I should say, when Dr. Patel evaluated him in 2006 and before then, he said he has this neuropathy in his legs. And the neuropathy, he said in his own declaration, came about, he said, between six and 12 months before June 2004, which by definition is 2003. In Dr. Patel's report, he said it's neuropathy. There's no indication that it's anything other than industrial related. So he did have an industrial injury that arose just before 2004 that wasn't five years old yet that he could have sought vocational rehabilitation. 4850 is confusing because it is a workers' compensation benefit. If I've said anything that's injustice, otherwise I'm sorry. That's not accurate. The workers' compensation benefit, it comes under the workers' compensation laws. But it's a different kind of benefit because it's paid by the employer. Other benefits are paid by carriers. So employers hire insurance companies for workers' comp. You have to show that you have that insurance to the Department of Industrial Relations. And if you don't, then you're in a lot of trouble. A lot of public agencies, they form this joint powers authority, and they kind of pool their resources, and then that's their carrier. They're self-insured in a way, but it's a joint thing among a bunch of public entities. That's who's paying the temporary disability benefit. That's who's paying the vocational rehabilitation. That's who's paying those things. If you're eligible for 4850, your employer pays that in lieu of temporary disability benefits. There's cases cited in my brief, so I wish I could tell you which one off the top of my head. It clearly says the way 4850 works is if you get temporary disability benefits, you give that as a remittance back to your employer. Because your employer is paying you the 4850, you're getting the TD from the carrier, and you remit that TD to the employer. So it was the employer who was supposed to pay 4850. He never went to the employer and said, give me 4850. He filed a workers' comp claim, a generic workers' comp claim, for cumulative trauma in 2006. If his employer says, no, we're not going to give you 4850 because we don't think you're industrially injured, which they clearly would not have done here. How could they say we're going to support your application for an industrially injured disability pension, but we don't think you're industrially injured? But let's just say they did that. If he sent them a letter and said, where's my 4850 pay, which he never did, and they said, we don't think you're entitled to that, you can go to the Workers' Compensation Appeals Court. There's cases cited in our briefs also, I believe, that say that's who – either that or it's another case that analyzes 21-156 that maybe is not cited. But take my word for it. The Workers' Compensation Appeals Court decides whether or not you're entitled to 4850 pay. They don't decide if you're a qualified employee, unusually enough. But there's no dispute about that. You're eligible for both as a firefighter. They have a dispute that he was not an eligible employee as a firefighter. They're saying he wasn't entitled to it because he wasn't entitled to temporary disability or voc rehab. 4850 doesn't say that you have to do that. The last point I want to make, it's a funny way to say it, that the plan – Ms. Springer is absolutely right. The plan does not say you can't disability retire until you exhaust 4850 pay. It doesn't say it like that. What it says is you have all these other offsets that we rely upon, Social Security, 4850 pay, Workers' Comp, temporary disability benefits, and you can't waive them. If you're entitled to them, you can't waive them and make us pay. We want you to take that offset and go get it. And we'll help you get it, and it's to your benefit if you do it. It's like saying, I got hurt on the work, but I just want a disability to retire, and I don't want to file a Workers' Comp plan, even though I'm entitled to temporary disability benefits or some other kind of benefit under Workers' Comp. I just want this self-funded disability plan to pay for that, even though there's all kinds of things set up so that I get that from the government. We don't say you have to do this. The plan doesn't say it like that. It says you have to go get these offsets. You have to go get Social Security. You have to go get 4850 pay. You have to get other kind of offsets that you're entitled to. And if you waive them one way or another, it would often happen, I'm going to waive it, I'm going to make an agreement with whoever that I can get the offset from, then I'll take less, and I'll just make them pay for it because I'm going to get some other benefit from that. You can't do that or else the cost of these benefits that my clients provide are going to go away. That's all I have on this. Thank you for your argument. The case of David Barbosa versus California Association of Professional Firefighters in 12-17439 is submitted.
judges: Albritton, Noonan, Ikuta